ACCEPTED
15-25-00058-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
6/20/2025 5:01 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00058-CV

# In the Court of Appeals
# for the Fifteenth Judicial District

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
6/20/2025 5:01:22 PM
CHRISTOPHER A. PRINE
Clerk

———

THE BOARD OF REGENTS OF
THE TEXAS A&M UNIVERSITY SYSTEM,

*Appellant.*

*v.*

BE&K BUILDING GROUP, LLC,

*Appellee*,

———

On Appeal from the
272nd Judicial District Court, Brazos County

———

## BRIEF FOR APPELLANT

———

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General

JACOB C. BEACH
Assistant Solicitor General
State Bar No. 24116083
Jacob.Beach@oag.texas.gov

Counsel for Appellant

# Identity of Parties and Counsel

**Appellant:**
The Board of Regents of the Texas A&M University System

**Appellate and Trial Counsel for Appellant:**
Ken Paxton
Brent Webster
Aaron L. Nielson
Jacob C. Beach (lead counsel)
William H. Farrell

Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-6407
Jacob.Beach@oag.texas.gov

**Appellee:**
BE&K Building Group, LLC

**Appellate and Trial Counsel for Appellee:**
Frank A. Domino
Mehaffy Weber P.C.
2615 Calder Ave., Suite 800
Beaumont, Texas 77702
(409) 835-5011
Frankdomino@mehaffyweber.com

Thomas O. Crist
Benesch, Friedlander, Coplan & Arnoff, LLP
200 Public Sq., Suite 2300
Cleveland, Ohio 44114
(216) 363-4500
tcrist@beneschlaw.com

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel ..............................................................i

Index of Authorities ..............................................................iv

Statement of the Case ..............................................................ix

Statement Regarding Oral Argument ..............................................................ix

Issues Presented ..............................................................ix

Introduction..............................................................1

Statement of Facts ..............................................................2

    I.   The Contract ..............................................................2

    II.  The Dispute ..............................................................6

    III. The Evidence ..............................................................7

        A.  Claim Letter dated August 2, 2019..............................................................7

        B.  Brett McCully Affidavit executed November 15, 2020..............................................................8

        C.  Brett McCully Deposition dated February 7, 2025 ..............................................................9

        D.  Status Letter dated December 19, 2022..............................................................10

        E.  Read Ballew Affidavit executed March 13, 2025..............................................................11

        F.  Calvin Boydstun Affidavit executed March 19, 2025..............................................................11

Summary of the Argument..............................................................13

Standard of Review ..............................................................14

Argument..............................................................14

    I.   BE&K fails to show a waiver of sovereign immunity. ..............................................................14

        A.  BE&K must show "breach of an express provision." ..............................................................14

            1.  BE&K has the burden to prove jurisdiction, which is determined at the time of the Petition..............................................................14

            2.  A challenge to jurisdictional facts requires evidence. ..............................................................15

            3.  Section 114.003 waives sovereign immunity from suit over the "breach of an express provision" of a covered contract. ..............................................................17

        B.  BE&K fails to meet its burden. ..............................................................19

            1.  BE&K provides zero relevant evidence..............................................................19

ii

2. BE&K fails under both summary judgment standards. ...............22

3. The "express provisions" confirm this outcome. ........................26

C. BE&K's contrary arguments lack merit...............................................30

1. BE&K misunderstands its burden..............................................30

a. BE&K does not have to "prove the merits."........................30

b. Post-petition facts are not relevant. ....................................31

c. Local government immunity does not apply here. ................31

2. BE&K overreads *Pepper Lawson*....................................................33

3. BE&K misconstrues the Agreement. ...........................................36

a. The Agreement identifies conditions precedent....................37

b. TAMUS cannot lawfully remit payment. ..............................39

II. BE&K's failure to provide notice precludes jurisdiction. ..........................44

A. Notice provisions are jurisdictional. ...................................................44

B. BE&K failed to give the required notice. ............................................45

1. The Agreement includes a statutory notice provision. ................45

2. BE&K did not give notice of its claims before suit. .....................46

C. BE&K's contrary arguments again lack merit......................................46

1. Substantial compliance does not apply.........................................46

2. Section 114 does not preclude a notice requirement....................48

III. Dismissal is the only appropriate outcome. ...............................................50

Prayer ..........................................................................................................................51

Certificate of Compliance ........................................................................................51

iii

# Index of Authorities

**Page(s)**

**Cases:**

*A Status Constr. LLC v. City of Bellaire*,
2022 WL 2919934 (Tex. App.—Houston (1st Dist.) 2022, no pet.) .................32

*Abila v. Miller*,
683 S.W.3d 842 (Tex. App.—Austin 2023, no pet.) .................................. 10, 41

*Alamo Heights Indep. Sch. Dist. v. Clark*,
544 S.W.3d 755 (Tex. 2018) ............................................................................ 15

*BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*,
519 S.W.3d 76 (Tex. 2017) ..........................................................................46-47

*Bd. of Regents of Univ. of Texas Sys. v. IDEXX Lab'ys*,
691 S.W.3d 438 (Tex. 2024) ..................................................................... 37, 39

*Brownlee v. Brownlee*,
665 S.W.2d 111 (Tex. 1984) ............................................................................ 21

*Calpine Producer Services, L.P. v. Wiser Oil Co.*,
169 S.W.3d 783 (Tex. App.—Dallas 2005, no pet.) .........................................38

*Centex Corp. v. Dalton*,
840 S.W.2d 952 (Tex. 1992) ........................................................................... 37

*City of Houston v. Williams*,
353 S.W.3d 128 (Tex. 2011) ...................................................................... 32, 45

*City of Rio Vista v. Johnson Cnty. Special Util. Dist.*,
2025 WL 309937 (Tex. App.—15th Dist. Jan. 28, 2025) .................................32

*Dall. Area Rapid Transit v. Whitley*,
104 S.W.3d 540 (Tex. 2003) ........................................................................... 14

*DM Arbor Ct., Ltd. v. City of Houston*,
988 F.3d 215 (5th Cir. 2021) ........................................................................... 15

*Dohlen v. City of San Antonio*,
643 S.W.3d 387 (Tex. 2022) ............................................................................36

*Dorroh-Kelly Mercantile Co. v. Orient Ins. Co.*,
104 Tex. 199 (1911) ........................................................................................36

*Engelman Irrigation Dist. v. Shields Bros., Inc.*,
514 S.W.3d 746 (Tex. 2017) ............................................................................32

*Eriksen v. Nelson*,
 708 S.W.3d 302 (Tex. App.—15th Dist. Jan. 30, 2025, no pet.) ......................14

*Flynn v. Haltom City Econ. Dev. Corp.*,
 2025 WL 421243 (Tex. App.—Fort Worth Feb. 6, 2025, no pet.) ...................23

*Garland Indep. Sch. Dist. v. Reeder Gen. Contractors, Inc.*,
 2024 WL 1208304 (Tex. App.—Dallas 2024, pet. denied) .............................32

*Grupo Dataflux v. Atlas Global Group*,
 541 U.S. 567 (2004) ......................................................................... 15, 31

*Gulf Const. Co. v. Self*,
 676 S.W.2d 624 (Tex. App.—Corpus Christi 1984)................................. 38, 39

*Health & Hum. Servs. Comm'n v. Navarro*,
 2024 WL 4984183 (Tex. App.—15th Dist. Dec. 3, 2024, no pet.)............. 15, 49

*Heckman v. Williamson County*,
 369 S.W.3d 137 (Tex. 2012) ............................................................... 14

*Hines v. Maple Hous. of Beaumont*,
 2019 WL 2455271 (Tex. App.—Beaumont 2019, no pet.) ...............................10

*Infinity Contractors International, ltd. v. BE&K Building Group, LLC*,
 No. 20-cv-36410 (Erath Cty. 2020)....................................................... 36

*J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.*,
 302 S.W.3d 515 (Tex. App.—Austin 2009, no pet.).........................................39

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
 650 S.W.3d 392 (Tex. 2022) ................................................................19, 36, 48

*Jelinek v. Casas*,
 328 S.W.3d 526 (Tex. 2010)................................................................. 21

*Legacy Masonry, LLC, v. BE&K Building Group, LLC*,
 No. 20-cv-36365 (Erath Cty. 2020)................................................................. 36

*Lightning Oil Co. v. Anadarko E&P Onshore, LLC*,
 520 S.W.3d 39 (Tex. 2017).................................................................24

*Mollan v. Torrance*,
 22 U.S. 537 (1824) ........................................................................... 15

*Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*,
 669 S.W.3d 205 (Tex. 2023) .... 17, 18, 19, 24, 27, 30, 31, 32, 33, 34, 35, 41, 43, 45

*Pidgeon v. Turner*,
 625 S.W.3d 583 (Tex. App.—Houston [14th] 2021, pet. denied) ....................15

*Prairie View A&M Univ. v. Chatha*,
 381 S.W.3d 500 (Tex. 2012)................................................ 15, 36, 44, 46, 47

*Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*,
    691 S.W.3d 448 (Tex. 2024) ..................................................49

*Ryland Grp. v. Hood*,
    924 S.W.2d 120 (Tex. 1996)................................................ 21, 22, 30

*Sheldon L. Pollack Corp. v. Falcon Industries*,
    794 S.W.2d 380 (Tex. App.–Corpus Christi 1990, writ denied) ................ 38, 39

*Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*,
    327 S.W.3d 104 (Tex. 2010) ..................................4, 6, 19, 23, 37, 38

*Starwood Mgmt., LLC v. Swaim*,
    530 S.W.3d 673 (Tex. 2017) ...................................................20

*State v. City of San Marcos*,
    2025 WL 1142065 (Tex. App.—15th Dist. Apr. 17,2025, no pet. h.) ..... 21, 22-23

*State v. Holland*,
    221 S.W.3d 639 (Tex. 2007)...................................................14

*Stringfellow v. Texas Dep't of Pub. Safety*,
    2025 WL 996361 (Tex. App.—15th Dist. Apr. 3, 2025, pet. filed)..............14

*Sw. Progressive Enters., Inc. v. R.L. Harkins, Inc.*,
    2002 WL 358830 (Tex. App.—El Paso 2002, no pet.) .........................6

*Texas A&M Univ. Dep't of Transp., Parking Servs. Dep't v. Reeves*,
    708 S.W.3d 312 (Tex. App.—15th Dist. Jan. 30, 2025, no pet.)................ 15

*Texas Ass'n of Bus. v. Tex. Air Control Bd.*,
    852 S.W.2d 440 (Tex. 1993) ........................................ 15, 20, 23, 31

*Texas Dep't of Parks & Wildlife v. Miranda*,
    133 S.W.3d 217 (Tex. 2004) ...........................14, 15, 16, 23, 24, 25, 30, 31, 43, 51

*Texas State University v. Tanner*,
    689 S.W.3d 292 (Tex. 2024) ........................................ 45, 46, 47

*Town of Shady Shores v. Swanson*,
    590 S.W.3d 544 (Tex. 2019)........................ 14, 16, 17, 20, 22, 23, 30

*USAA Tex. Lloyds Co. v. Menchaca*,
    545 S.W.3d 479 (Tex. 2018) ..................................................19

*Walker Drywall, LLC, v. BE&K Building Group, LLC*,
    No. 20-cv-36421 (Erath Cty. 2020)...........................................36

*Wichita Falls State Hosp. v. Taylor*,
    106 S.W.3d 692 (Tex. 2003) ............................................ 48, 49

*Young v. Texas Parks & Wildlife Dep't*,
    2025 WL 1200947 (Tex. App.—15th Dist. Apr. 24,2025, no pet.h.) ................50

**Statutes and Rules:**

Tex. Civ. Prac. & Rem. Code:

§ 114.001(3) ................................................................................... 17

§ 114.002 ........................................................................................ 17

§ 114.003.............................................................. 13, 17, 18, 33

§ 114.005............................................................................................ 49

Tex. Educ. Code § 51.9335(c) ...................................................40

Tex. Gov't Code Ann. § 403.071 ...............................................39

Tex. Gov't Code ch. 2260.................................. 45, 46, 47, 48, 49, 50

Tex. Gov't Code:

§ 311.034.............................................................................. 44, 45

§ 321.013 .............................................................................. 40, 41

§ 403.071(g) ...............................................................................40

§ 2102.004 ........................................................................... 40, 41

§ 2166.302 ...................................................................... 2, 40, 50

§ 2260.051 ................................................................................ 47

§ 2260.051(b) ........................................................................... 46

§ 2260.051(c) ........................................................................... 46

§ 2260.052 .......................................................................... 46, 47

§ 2260.054 ................................................................................ 39

§ 2260.101-.08 .......................................................................... 49

Tex. Loc. Gov't Code § 271.151–.152............................................32

Tex. Prop. Code Ann. § 53.101 ..................................................39

Tex. R. Civ. P.:

52...................................................................................................34

166a(i)...........................................................................................23

166a(c) ....................................................................................14, 21

166a(e) .........................................................................................21

**Other Authorities:**

*Codification of Acct. Standards & Procs.*, Statement on Auditing Standards No. 1 (Am. Inst. of Certified Pub. Accts.) (GAAS) ...................................41

*Rsch. and Dev. Arrangements*, Statement of Fin. Acct. Standards No. 68 (Fin. Acct. Standards Bd.) (GAAP)............................................. 41

House Comm. on Judiciary and Civ. Juris., Bill Analysis, Tex. H.B.
    586, 83d Leg., R.S. (2013) ..............................................................................50

Processes Involving Performance or Scope of Work § 5.C.2,
    *Construction Projects*, American Bar Association (2nd ed. 2023) ...................24-25

## Statement of the Case

*Nature of the Case*:  This is a suit for breach of contract. Because it is brought against the State, the case presents a threshold question regarding sovereign immunity.

*Course of Proceedings*:  On September 1, 2020, BE&K Building Group, LLC, ("BE&K") filed suit. On November 16, 2020, the Board of Regents of the Texas A&M University System ("TAMUS") filed a plea to the jurisdiction asserting sovereign immunity. Following over four years of discovery, BE&K filed a response on March 14, 2025. TAMUS replied on March 20, 2025. The district held a hearing on March 21, 2025.

*Trial Court*:  272nd Judicial District Court, Brazos County
The Honorable John L. Brick

*Trial Court Disposition*:  The trial court denied TAMUS's plea on April 9, 2025.

## Statement Regarding Oral Argument

Because this case involves a routine evidentiary plea to a limited record, TAMUS does not believe oral argument would aid the Court's disposition.

## Issues Presented

The issues presented are:

1. Whether BE&K presented any evidence of TAMUS's duty to pay as of September 1, 2020.

2. Whether BE&K's failure to comply with a statutory notice provision precludes jurisdiction.

3. Whether dismissal applies where the jurisdictional defect cannot be cured.

# INTRODUCTION

Expectation without obligation is entitlement, not agreement. A contract is a mutual exchange of promises—each party must do its part before demanding the benefit of the bargain. The contract here provided TAMUS would issue final payment only after BE&K completed all work on the construction project and submitted the required documents. As of the day BE&K filed suit, it had done neither. Yet it sued anyway, alleging breach of the very provisions it had not satisfied.

BE&K now tries to turn that failure into a fact dispute. To overcome the sovereign immunity threshold, BE&K had to provide a "scintilla" of evidence that it upheld its end of the bargain. That is where it fails. BE&K instead shows an *expectation* that it can hale TAMUS into court regardless of BE&K's *obligation* to provide any evidence of its claims. Yet no one is entitled to sue the State as they please.

The trial court denied TAMUS's jurisdictional plea. But two fundamental principles compel reversal: (1) jurisdiction is determined at the time of the petition, and (2) under the summary judgment standard, some evidence beats no evidence—every time. BE&K failed to produce a single piece of evidence showing it had completed its work or submitted a proper payment application before filing suit.

That silence is dispositive.

Sovereign immunity is not waived simply because a plaintiff invokes a contract. The statute at issue here waives immunity only for breach of express provisions, meaning the claimant has done what the contract requires. BE&K's "sue first, comply later" approach is more than premature—it is jurisdictionally barred. The trial court erred in allowing this case to proceed.

In August 2016, TAMUS hired BE&K to manage the construction of a multi-level building at Tarleton State University in Stephenville, Texas (the "Project"). CR.24. As the Construction Manager at Risk ("CMAR"), BE&K was responsible for the Project from pre-construction planning to substantial completion. CR.24. BE&K missed the target completion date by nearly a year. CR.7, ¶ 15; CR.9, ¶ 28.

## I.   The Contract

The CMAR Agreement governs this project, outlining the scope of work, CR.24, the process for intra-project alterations, CR.111-16, and agreements on how the parties would resolve any disputes, CR.54-55, 128. The CMAR Agreement has three components: the Uniform General Conditions ("UGC") which apply to nearly all state contracts, CR.24-61; Tex. Gov't Code § 2166.302; the Uniform Supplementary Conditions ("USC"), which apply to all TAMUS construction agreements, CR.67-129; and the Special Conditions ("SC") which apply to this project alone, CR.130-278. The parties refer to the Uniform General & Supplemental Conditions together (the "UGSC").

The parties set an anticipated maximum price ($40.5 million) and target completion date (August 31, 2018); they also agreed that time is of the essence on this project. CR.50, 63, 106. Consistent with the essential timing requirement, the contract outlines liquidated damages for each day that BE&K misses the target completion date. CR.106.

*Article 9: Schedule.* UGSC Article 9 covers the Project's schedule. CR.100-07. Section 9.6, titled "Modification of the Contract Time," outlines which delays are

excusable (e.g., inclement weather) and which are not (e.g., schedule mismanagement). CR.103-04. Whether the Owner agrees to add days for an excusable delay, and how many, if so, turns on what the construction industry calls "the critical path." CR.104, CR.175, ¶ 12, ("Contract time extensions will not be granted unless a Change Order causes … [a]n increase in the duration of the Critical Path."); CR.616 (78). For example, if inclement weather prevents any work from going forward, this would be an excusable delaying impacting the critical path. If the weather occurred during a planned holiday, that would be an excusable delay not affecting the critical path. *See* CR.624 (109) (explaining that "the nature of the critical path is different from whether it's an excusable [delay] … It could be an excusable delay that has no impact to the schedule and, therefore, no time extension).

Per the Agreement, a "concurrent delay," is "[w]hen the completion of the Work is simultaneously delayed by an excusable delay and a delay arising from a cause not designated as excusable." CR.104. Continuing the above example:  if the crew cannot continue work because the Contractor did not order supplies in time, that would be a delay from mismanagement. CR.625 (113-14). In that situation, even if the critical path were impacted, "the Contractor may not be entitled to a time extension for the period of concurrent delay." CR.104.

***Article 10: Payment.*** The CMAR Agreement provides for progress payments to be made monthly and upon receipt of a payment application that contains proper documentation. CR.107-08. UGSC Article 10.2.3 provides that upon "receipt of the Contractor's formal invoice, the [Architect/Engineer ("A/E")] will review the ap-

plication … for completeness, and forward to [TAMUS's Designated Representative ("ODR")]." CR.108-09. "The A/E will certify that the application is complete and payable, or that it is incomplete, stating in particular what is missing. If the Invoice is incomplete, [BE&K] shall make the required corrections and resubmit the Invoice for processing." CR.109. Absent the certified invoice, TAMUS has no duty to make the progress payment. *See* CR.109 ("The Owner has no duty to pay … except on receipt by the ODR of … a complete Invoice certified by the A/E.").

Article 10 also addresses "retainage," which is "the [Owner's] right to retain a percentage of the contract balance to satisfy any outstanding liens on the project if necessary." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 106 (Tex. 2010). The purpose of retainage is to withhold funds to cover any damages, including work that the Owner must remedy or potential claims by subcontractors. *See id.* UGSC Article 10.3.2 provides that "[t]he Owner will withhold from each progress payment, as retainage, 5 percent of the total earned amount" and "[a]t least sixty-five (65) percent of the total Contract must be completed before the Owner can consider a retainage reduction or release." CR.109. As a prerequisite to any release (partial or full), "[t]he Contractor shall provide written consent of its Surety for any request for reduction or release of retainage." CR.109.

*Article 11: Modification.* UGSC Article 11 outlines the "change order" process, which effectively governs the intra-project amendments and associated disputes. CR.111-16, 615 (35). As addressed above, on complex, capital-intensive projects like this one, a multitude of factors can delay work or increase cost. To account for these possibilities, the UGSC outlines the process for delaying the target completion date,

4

CR.103-06, 114, or increasing cost expenditure, CR.113-16. The Agreement provides that "[t]he Contract Sum and the Contract Time can only be changed by Change Order." CR.111.

Change orders impacting costs follow this process: first, BE&K submits an itemized estimate for the work, CR.115, ¶ 11.7.2; this amount is based on its cost of time and materials plus a predetermined markup (otherwise known as a "cost-plus" bid), CR.115; CR.610 (53:13-18). If approved, TAMUS fronts the estimated amount. CR.48-49. At the end of the project, BE&K submits its cost documentation for all change orders. *See* CR.46, ¶ 10.3.1.5 ("Owner shall have no obligation to make Final Payment until a complete and final accounting of all the Direct Construction Cost has been submitted by Contractor and has been audited and verified by Owner or Owner's representatives."); CR.46-47, ¶ 11.1 (same for personnel costs). TAMUS then audits the expenses; to the extent the actual costs are less than the amount issued in the estimate, TAMUS deducts that amount from the final payment due to BE&K. *See* CR.49-50, ¶ 12.3 ("Owner shall be entitled to recognize and recover 100% of any savings identified by cost review or audit at any time, before or after Final Payment."). A similar process applies to the General Conditions Costs—TAMUS alters the final payment in response to any discrepancies from the audit. CR.45, ¶ 10.3.1.2.

Article 11 also outlines "Claims for Additional Costs"—which allows BE&K to request costs that fall outside of a change order. CR.113-16. "If the Owner and the Contractor cannot agree on the amount of the adjustment in the Contract Sum, it shall be determined as set forth under Article 15." CR.113.

*Article 12: Completion.* UGSC Article 12 explains the process for closing out the project, including closing inspections, CR.116, release of final progress payment and retainage, CR.120, and the offset and deduction process, CR.120. To request final payment, the Contractor must first achieve "certified completion of all Work, including all punch list items,[1] cleanup, and the delivery of record documents." CR.120; *see* CR.118 ("Completion of all Work is a condition precedent to the Contractor's right to receive Final Payment."). This includes submitting the "Close-Out Documents" identified in section 12.3.2. CR.120. At that point, "the Contractor shall submit a certified Application for Final Payment" which includes "all sums held as retainage … to the A/E and the ODR for review and approval." CR.120.

## II. The Dispute

Construction began in April 2017. BE&K missed the target completion date by almost a year. CR.7, ¶ 15, CR.9, ¶ 28. The parties dispute the reasons for this substantial delay. BE&K filed suit on September 1, 2020, alleging that TAMUS breached the CMAR Agreement by improperly withholding final payment and release of retainage. CR.4-20. At the time of suit, BE&K had not completed the remaining work. CR.300, ¶ 9. Even today, the Project as outlined in the Agreement remains unfinished. CR.627 (123:19-124:10).

---

[1] "A punch list is a document created in connection with a walk-through by the owner or architect and contractor. The punch list may include clean up and touch up work, as well as work that is unacceptable in quality to the owner, contractor, or architect." *Sw. Progressive Enters., Inc. v. R.L. Harkins, Inc.*, No. 08-00-00294-CV, 2002 WL 358830, at *5 (Tex. App.—El Paso 2002, no pet.); *see Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 106–07 (Tex. 2010) (describing a "punch list" as "a list of items … to be completed or corrected before final payment").

## III. The Evidence

In addition to the CMAR Agreement, there are five undisputed documents in the record. CR.570.

### A. Claim Letter dated August 2, 2019

Brett McCully, Area Manager for TAMUS's Office of Facilities and Planning & Construction, responds to a letter from Steven Olson, Chief Operating Officer of BE&K, titled "July 23, 2019 Outstanding Claims for Time Extensions and Additional Compensation." CR.302. McCully acknowledges the "detailed explanation of BE&K's positions regarding specific perceived external impacts to [its] construction schedule" but explains that "this information again fails to meet the stated contractual requirements for time extension requests, and therefore again your request cannot be fully considered." CR.302. He states that "[UGSC] Section 9.9.3.2 requires that any such requests include the impact(s) of any concurrent delays of the project. UGSC Section 9.8 defines more clearly what a concurrent delay is, and how it will affect any request for time extension." CR.302.

He continues: "Based on our past discussions and correspondence together, we are both aware of many delays in the completion of work that are solely the responsibility of BE&K that would affect the determination and calculation of delay impacts in light of this requirement." CR.302. He then provides, as examples: "[f]ailure of BE&K to complete the subcontractor buyout process as scheduled, failure of BE&K to complete the submittal process as scheduled, and failure of BE&K to assure that sufficient manpower and resources were present onsite to meet the task completion duration requirements identified in the Work Progress Schedule." CR.302. McCully

7

explains that these "are all factors (among others) that need to be addressed by BE&K within a contractually compliant request." CR.302.

McCully provides an example from previous correspondence: "I specifically described to you the 38-week delay in getting the building to a temporary dry-in state, which was not directly affected in any way by any of the perceived delays you have described, yet this delay period significantly overlaps several of your delay schedule calculations." CR.302. "I have pointed you to the evaluation information needed, given you a very specific example for an issue to address, and you have again submitted an incomplete request without attempting to address the noted deficiencies." CR.302-03. He explains that "this project has been issued several partial substantial completion determinations, but that the project as a whole is not substantially complete, nor will it be until all components of the project reach the required level of completion determined by the Owner as defined by the contract." CR.303.

McCully acknowledged that "a great deal of information has been submitted to support your requests for time extensions at various times" but TAMUS's "responses have been specific enough to demonstrate why we do not believe your requests meet the contractual requirements for the extension(s) requested." CR.303. Indeed, "[o]nce BE&K has complied with all contractual requirements in submission of a time extension request, we will meet our obligations and review the request in light of the contract terms." CR.303.

### B. Brett McCully Affidavit executed November 15, 2020

McCully filed an affidavit that accompanied TAMUS's plea to the jurisdiction. CR.300-01. This affidavit explains McCully's competency and personal knowledge

of the Project and verifies that he wrote the Claim Letter dated August 2, 2019. CR.300. He testifies that he was "involved in the oversight of the Project" and that "[a]ll work and punch list items for the Project are not yet complete" because "[w]ork related to the roof, the mechanical yard gate, and multiple bathroom sinks has yet to be completed." CR.300. He also lists twelve sets of documents that TA-MUS needs before it can process final payment or release retainage. CR.300-01.

## C. Brett McCully Deposition dated February 7, 2025

More than four years later, BE&K deposes McCully over the affidavit. McCully affirms that all his statements were true at the time they were made. *See, e.g.*, CR.602, 607. He explained that the Project is not complete until BE&K provides the contractually mandated documents. CR.608-09 (48:25-49:4), 627 (122:20-124:10). He gave examples of the types of missing documents that are necessary to support a payment application. *See* CR.605 (34:14-19) (providing, as examples, "the back-up information … of the general conditions costs.… [the] seven or eight documents that go with that, cash flow, release of liens"); CR.68, ¶ 1.4, CR.120, ¶ 12.3.2. McCully explained that the specific documentation depends on what costs BE&K is claiming for any given issue—and not something he can answer in generalities.

He addressed multiple other issues, including:

- *Lump Sum v. Retainage.* The contract was competitively bid on a lump sum but change orders are made on a "cost-plus" calculation. CR.610 (53:11-21); CR.621 (99:13-21). These follow the audit process in Article 11, explained above. CR.115-16, ¶ 11.8.1; CR.610 (54:14-18).

9

- *Roof and Gate.* BE&K did not complete the punch list to achieve substantial completion. Instead, TAMUS had to hire new contractors to fix BE&K's errors constructing the roof and the mechanical gate. CR.633 (145-47); CR.603 (28:1-5).

- *Hydronics and Culvert.* TAMUS added scope for a side project on an adjacent lot. CR.616 (78:23-79:11); *see generally* CR.615-17 (74-82). Once BE&K informed TAMUS that it could not perform the added scope, TAMUS paid BE&K for work done to that date. CR.615 (74:17-75:15). McCully said there was no time extension granted because the culvert did not impact critical path, *supra* at 3—and this was made clear to BE&K from the outset of added scope, CR.617 (81:11-21, 82:1-10).

- *Non-submittal.* TAMUS has not rendered a decision on any request due to non-submittal. CR.627 (124:3-10). Accordingly, there has been no determination "on the merits" of BE&K's requests, but there would be no reason not to process the application once TAMUS receives the documents. CR.628 (125:1-23).

### D. Status Letter dated December 19, 2022

BE&K's response in opposition cited a status update letter to the district court dated December 19, 2022. CR.592-93. Although lawyer's statements are not evidence, TAMUS must address it due to BE&K's reliance on it. *Cf. Abila v. Miller*, 683 S.W.3d 842, 848 (Tex. App.—Austin 2023, no pet.) ("[A]rguments of counsel are not evidence."); *Hines v. Maple Hous. of Beaumont*, No. 09-17-00381-CV, 2019 WL 2455271, at *4 (Tex. App.—Beaumont 2019, no pet.) (mem. op.) (collecting

sources). The letter informs the court that, since the last hearing, BE&K's work was "100% complete on the Tarleton project" because TAMUS is "self-performing" the remaining work. CR.592. The letter states that "BE&K will share its pencil copy of its Tarleton final application for payment before year end" and will have "separate closeout meetings" to address "documentary support required for BE&K to submit its final Pay Applications." CR.592.

### E.  Read Ballew Affidavit executed March 13, 2025

BE&K Senior Vice President Read Ballew provides an affidavit about the status of the project as of March 13, 2025. CR.588-90. He avers that the project is complete and that BE&K has satisfied all the conditions for payment and retainage release. CR.589. He notes that he is not aware of any documents in McCully's 2020 affidavit that TAMUS has not received. CR.590.

### F.  Calvin Boydstun Affidavit executed March 19, 2025

McCully stated at his deposition that he does not know the exact documents still missing as of March 2025 because that is a process between the auditor and BE&K. CR.609-10 (52:5-53:9). He said that the information he receives on his end is that the audit has not been completed due to lack of sufficient documentation—and that this is something the audit group has told him multiple times over the years. CR.601 (19:14-22); CR.613 (68:4-9).

BE&K argued that these statements "nullified and mooted his entire [2020] affidavit." CR.568. TAMUS accordingly attached an affidavit from Calvin Boydstun, an employee of the third-party auditor, which put forward the dozens of categories

11

of documents still outstanding and detailed his attempts to retrieve this information from BE&K. CR.650-55. BE&K objected to this affidavit as improper expert testimony. RR.26-28, 43-44. TAMUS countered that Boydstun provides facts. RR.36.

The district court stated that it did not rule on BE&K's objection but its decision "would be the same regardless of whether the Court sustained or overruled any of the objections presented by [BE&K] to that affidavit." CR.693.

## Summary of the Argument

The trial court lacked jurisdiction because the State did not consent to suit in these circumstances. Like any plaintiff, BE&K carries the burden to affirmatively establish jurisdiction at the time it filed the Petition. Here, it invoked Texas Civil Practice and Remedies Code section 114.003, which "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of [a covered] contract." BE&K alleged that TAMUS breached the CMAR Agreement by failing to remit final payment and release retainage. TAMUS answered that BE&K had not satisfied multiple conditions precedent to TAMUS's duty to pay and filed an evidentiary plea to the jurisdiction. BE&K then had to adduce evidence that satisfies a summary judgment burden as to jurisdiction. This is where BE&K fails.

BE&K provided a single, conclusory affidavit that does not address the relevant timeframe and is therefore not probative. TAMUS provided affidavits, documents, and a deposition about the relevant timeframe. BE&K accordingly fails under both a "no-evidence" and traditional summary judgment standard. BE&K relies on post-hoc quibbles in lieu of evidence, which, combined with its arguments below, show a fundamental misunderstanding of its burden.

The trial court also lacks jurisdiction because BE&K failed to provide statutorily required notice before filing suit. The Legislature imposes, and the Texas Supreme Court has upheld, a jurisdictional threshold for notice provisions—due to their role in preserving state resources. BE&K's decision to skip this step is another reason that the district court should have dismissed the suit.

This Court should correct course.

A plea questioning the trial court's jurisdiction raises a question of law, which is reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007); *Eriksen v. Nelson*, 708 S.W.3d 302, 307–08 (Tex. App.—15th Dist. Jan. 30, 2025, no pet.). For an evidentiary plea like this one, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The plaintiff has the burden to adduce evidence to "raise a fact question on the jurisdictional issue." *Id.* The Court reviews the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "[T]o determine whether sovereign immunity has been waived, courts look to the substance of a plaintiff's claim, not the plaintiff's characterization of his claims." *Stringfellow v. Texas Dep't of Pub. Safety*, No. 15-24-00024-CV, 2025 WL 996361, at *3 (Tex. App.—15th Dist. Apr. 3, 2025, pet. filed) (citing *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003)).

## ARGUMENT

## I. BE&K fails to show a waiver of sovereign immunity.

### A. BE&K must show "breach of an express provision."

#### 1. BE&K has the burden to prove jurisdiction, which is determined at the time of the Petition.

BE&K has the burden to affirmatively demonstrate the trial court's jurisdiction. *Swanson*, 590 S.W.3d at 550 (citing *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012)). The State retains immunity "unless surrendered in express and

unequivocal terms by the statute's clear and unambiguous waiver." *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012). The Court must resolve any ambiguity in favor of immunity. *Id.* at 513; *Health & Hum. Servs. Comm'n v. Navarro*, 2024 WL 4984183, at *3 (Tex. App.—15th Dist. Dec. 3, 2024, no pet.).

Jurisdiction is determined at the time of the petition. *Texas Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993); *see Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 570 (2004) ("'The jurisdiction of the court depends upon the state of things at the time of the action brought.' This time-of-filing rule is hornbook law." (citation omitted) (quoting *Mollan v. Torrance*, 22 U.S. 537 (1824)). The Fifth Circuit recently explained that "[a]llowing a case to ripen" post-petition "is in seeming tension with [this venerable rule." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 219 (5th Cir. 2021). BE&K must show that the district court had jurisdiction on the date BE&K filed its petition—September 1, 2020. CR.4; *see Pidgeon v. Turner*, 625 S.W.3d 583, 599 (Tex. App.—Houston [14th] 2021, pet. denied).

### 2. A challenge to jurisdictional facts requires evidence.

"A plea to the jurisdiction 'may challenge the pleadings, the existence of jurisdictional facts, or both.'" *Texas A&M Univ. Dep't of Transp., Parking Servs. Dep't v. Reeves*, 708 S.W.3d 312, 316 (Tex. App.—15th Dist. Jan. 30, 2025, no pet.) (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). A challenge on the pleadings requires the court to "determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties

when necessary to resolve the jurisdictional issues raised." *Id.* at 227. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction" but "if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 227–28; *see id.* at 228 ("[T]his standard generally mirrors that of a summary judgment.").

In the seminal case, *Texas Department of Parks & Wildlife v. Miranda*, the State filed an evidentiary plea challenging an alleged waiver of sovereign immunity. *See* 133 S.W.3d at 221. There, the plaintiff sued the State under the Texas Tort Claims Act after a tree limb fell on her at a state park. *Id.* at 220. The Court explained that, following an evidentiary plea, a plaintiff must provide enough evidence to raise a fact question as to each element underlying the immunity waiver. *Id.* at 231-32. The Court held that "[t]he Mirandas fail[ed] to point to any evidence, and the record contains no evidence, that shows … [the State's] knowledge of that risk." *Id.* at 232. They accordingly "failed to raise a fact question regarding … alleged gross negligence" and thus "f[e]ll short of satisfying the requirements for the Legislature's limited grant of a waiver of sovereign immunity from suit under the applicable statutes." *Id.* As a result, "the trial court lacked subject matter jurisdiction." *Id.*

The Court later extended *Miranda* to include no-evidence summary judgment motions. *See Swanson*, 590 S.W.3d at 551. "Because jurisdiction may be challenged on evidentiary grounds and the burden to establish jurisdiction, including waiver of a government defendant's immunity from suit, is on the plaintiff, we see no reason to allow jurisdictional challenges via traditional motions for summary judgment but

to foreclose such challenges via no-evidence motions." *Id.* So long as there has been "adequate time for discovery," TAMUS "may move for summary judgment on the ground that there is no evidence of one or more essential elements" of which BE&K bears the burden. *Id.* "The court must grant the motion unless [BE&K] produces summary judgment evidence raising a genuine issue of material fact." *See id.*

### 3. Section 114.003 waives sovereign immunity from suit over the "breach of an express provision" of a covered contract.

BE&K contends that suit is appropriate under Texas Civil Practice and Remedies Code section 114.003, which "waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of an express provision of the contract, subject to the terms and conditions of this chapter." The Texas Supreme Court recently examined a jurisdictional dispute raised under the same statute. *See Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*, 669 S.W.3d 205 (Tex. 2023) (per curiam).

Pepper Lawson Horizon ("PLH"), a construction contractor, sued Texas Southern University ("TSU") for failure to pay the amount due under a construction agreement. *Id.* at 207-09. TSU argued that PLH failed to plead facts showing that Section 114's immunity waiver applied. *Id.* The Court explained that "Section 114.003 clearly and unambiguously waives immunity from suit for breach-of-contract claims against … 'a university system or a system of higher education,' that has entered into a written contract for construction services or materials" but "cabins the waiver to 'a claim for breach of an express provision of the contract.'" *Id.* at 210 (quoting Tex. Civ. Prac. & Rem. Code §§ 114.001(3), .002, .003). TSU did not chal-

lenge jurisdictional facts but instead contested the pleadings. *Id.* at 212. The question, then, was "whether PLH's breach-of-contract allegations and damages claims fall within the scope of the express statutory waiver." *Id.* at 211.

The Court explained that PLH had the burden to plead the elements of Section 114.003. *Id.* To that end, "PLH alleged that TSU (1) entered a written contract with PLH for construction services, (2) did not timely pay the balance owed under the contract, and (3) did not equitably adjust the contract price and time as contractually required for excusable delays." *Id.* "PLH further identified the specific contract provisions it contends TSU breached." *Id.*

To prevail, TSU then had to "conclusively establish" that "it did not breach an express provision of the contract when it refused to equitably adjust the contract time and price" and "PLH did not follow the procedures triggering TSU's obligation to pay." *Id.* The First Court of Appeals concluded that "PLH failed to allege or prove that it met the conditions precedent for requesting a time extension." *Id.* at 212. But, the Supreme Court explained, "PLH generally pleaded that it had satisfied all conditions precedent, and TSU neither specifically denied that PLH satisfied the payment conditions nor challenged the facts that were actually pleaded." *Id.* As a result, PLH established that TSU owed a duty to perform, leaving TSU to show it adequately exercised its equitable discretion—a tall, and ultimately unattainable task, when armed with pleadings alone. *See id.*

Although the dispute in *Pepper Lawson* remained on the pleadings, the Texas Supreme Court explained that a court "may [also] consider evidence and must do so

when necessary to resolve the jurisdictional issues raised." *Id.* at 211. This refers to a challenge to the facts underlying an assertion of jurisdiction. *Supra* at I.A.2.

## B.  BE&K fails to meet its burden.

BE&K's petition alleges improper refusal to issue final payment and release of retainage. *See, e.g.*, CR.4-5. In its answer, TAMUS denied the satisfaction of conditions precedent, CR.279-80, ¶¶ 1, 4, 6, 7, 8; and, in a plea to the jurisdiction, TAMUS raised a challenge to the jurisdictional facts, CR.286-92. BE&K accordingly must provide evidence of its jurisdictional claims; this is where it comes up short.

### 1.  BE&K provides zero relevant evidence.

TAMUS explained that it had no duty to pay because BE&K had not satisfied conditions precedent to receive payment. *See, e.g.*, CR.300-03. "A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 108. "If the condition is not fulfilled, the contract or obligation attached to the condition cannot be enforced." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404 (Tex. 2022). Put simply, the failure to satisfy the conditions precedent means no corresponding duty by TAMUS—and no duty means no breach. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (outlining the elements for breach of contract).

Though the burden is *not* on TAMUS, it provided evidence of multiple conditions precedent to payment that were lacking on September 1, 2020. As an initial matter, BE&K had filed neither a final payment application nor a request for retainage release. CR.300-01, ¶¶ 10, 16. But the issue ran deeper than that; TAMUS

pointed to evidence that BE&K, for example, had not: (1) completed the work, CR.300, ¶ 9; (2) submitted documents needed to audit costs, CR.300, ¶¶ 6, 8; or (3) submitted proper change orders underlying its claims, CR.301, ¶ 18.

BE&K, in response, provided no evidence of compliance with these conditions precedent. BE&K's sole evidence is an affidavit by Read Ballew. CR.588-90. But the affidavit is not probative as a matter of law for three reasons. First, it says nothing about the project or dispute status as of September 1, 2020—which is the relevant inquiry. Second, it contains conclusions, not facts. Third, the only assertions with a modicum of detail are not based on personal knowledge.

First, Ballew provides no evidence about the relevant timeframe. Because the Court must limit its inquiry to the state of things at the time of the petition, *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9, the only relevant evidence is about the project status on or before September 1, 2020. Yet the affidavit is conspicuously void of any references to the project status in or around this timeframe. In fact, aside from Ballew's employment and the Agreement execution, the affidavit is void of any dates whatsoever. CR.588-90. Even under generous inferences afforded to BE&K at this stage, the past tense statements made in March 2025 are not probative of the project status in September 2020—especially when the dates have been put at issue. BE&K's failure to produce a "scintilla" of evidence is dispositive. *See Swanson*, 590 S.W.3d at 551-52.

Second, Ballew merely restates the legal conclusions that BE&K urges regarding the crux of the dispute. "To avoid being conclusory, the affidavit must explain 'how and why ….'" *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 679 (Tex. 2017) (per

20

curiam) (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010)). On the key points, Ballew avers that "BE&K … provided documentation as required under the CMAR Agreement," CR.589, ¶ 14, and "BE&K satisfied all conditions precedent to bring this claim and for TAMUS to release its retainage and pay its final payment application," CR.589, ¶ 15. But those are conclusory statements about the nature of the dispute; they provide no facts or documents to support them. The Texas Supreme Court has held that "[c]onclusory affidavits are not enough to raise fact issues." *Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996) (per curiam) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). That is because "[t]hey are not credible, nor susceptible to being readily controverted." *Id.* (citing Tex. R. Civ. P. 166a(c)); *see State v. City of San Marcos*, No. 15–24– 00084–CV, 2025 WL 1142065, at *1 (Tex. App.—15th Dist. Apr. 17, 2025, no pet. h.) (explaining that an evidentiary plea mirrors the summary judgment standard in Tex. R. Civ. P. 166a(c)).

Third, Ballew does not demonstrate personal knowledge. Ballew avers that he "is unaware of" any of the documents identified in the McCully affidavit remaining outstanding (in 2025). CR.589-90, ¶¶ 11, 17. But "testimony based on affiant's best knowledge and belief does not meet Rule 166a(e)'s strict requirements" because "[s]uch language does not positively and unqualifiedly represent that the 'facts' disclosed are true." *Ryland Grp.*, 924 S.W.2d at 122. Nor does he aver that he submitted the documents or even supervised that process. TAMUS's evidence, meanwhile, shows that McCully discussed the application insufficiencies with Steven Olson, not Read Ballew. CR.302-03. Averring that Ballew is "not aware of" non-compliance

does not meet the personal knowledge requirement to represent that BE&K affirmatively complied. *See Ryland Grp.*, 924 S.W.2d at 122.

Ballew's affidavit mirrors the evidence the Texas Supreme Court rejected in *Ryland Group. Id.* That case involved a dispute over alleged negligence in constructing a deck that collapsed. *Id.* at 121. Plaintiff's affidavit stated "*[i]t is my understanding* that neither the builder nor the subsequent deck renovator notified [relevant parties] of the use of the untreated wood. This failure to notify amounts to a concealment of a known violation of the specifications and industry practice." *Id.* at 122. The Court held that the affiant's "understanding" was not sufficient to show personal knowledge and his statement that the "'failure to notify amounts to concealment or a known violation of the specifications and industry practice' [was] conclusory" and "[t]herefore … d[id] not raise a fact issue." *Id.* The same applies here.

### 2. BE&K fails under both summary judgment standards.

TAMUS would prevail under both a no-evidence and traditional summary judgment standard. *See Swanson*, 590 S.W.3d at 551-52.

The work completion is the most straightforward example. McCully's affidavit explains that, as of November 2020, "[w]ork related to the roof, the mechanical yard gate, and multiple bathroom sinks has yet to be completed." CR.300, ¶ 9; *see also* CR.603 (25:2-9). The CMAR Agreement plainly states that "[c]ompletion of all Work is a condition precedent to … final payment." CR.118, ¶ 12.1.2.1; *see* CR.580 (BE&K acknowledging this). BE&K's burden on this front is to "adduce evidence to 'raise a fact question on the jurisdictional issue.'" *City of San Marcos*, 2025 WL

22

1142065, at *4 (quoting *Miranda*, 133 S.W.3d at 228). Ballew's affidavit does not address whether the work was complete on or before September 1, 2020. As a result, the work completion issue alone forecloses any duty by TAMUS to make final payment. *See Solar Applications Eng'g*, 327 S.W.3d at 108.

This says nothing of TAMUS's statutory obligation to collect proper invoices before remitting payment—something BE&K comes up short on as well. *See* CR.43, ¶ 10.1.8.3 ("Owner shall not be obligated to make any payment to Contractor … [if] [t]he payment request has insufficient documentation."); CR.300-01, ¶¶ 6-8, 10-18 (McCully outlining the missing documentation).

*No-evidence.* BE&K's lack of evidence supporting its jurisdictional allegations means that the trial court should have dismissed the petition. *Swanson*, 590 S.W.3d at 551-52. TAMUS raised the issue about work completion in the answer, CR.279-80, ¶¶ 4, 7, plea to the jurisdiction, CR.294, and attached evidence, CR.300, ¶ 9. BE&K knew it was at issue. CR.580, 592. It received a sufficient opportunity for discovery. *Swanson*, 590 S.W.3d at 552 (citing Tex. R. Civ. P. 166a(i)).

BE&K points to the 2022 status update and McCully's statement about the project as of March 2025. CR.580. But post-petition evidence is not relevant. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446 n.9. BE&K provided no relevant evidence that it satisfied the condition precedent for payment. *Supra* at I.B.1. The Court need go no further. *See Flynn v. Haltom City Econ. Dev. Corp.*, No. 02-24-00214-CV, 2025 WL 421243, at *8 (Tex. App.—Fort Worth Feb. 6, 2025, no pet.) (Where a party "fail[s] to overcome [the] no-evidence burden, [the Court] need not address the traditional motion

for summary judgment to the extent it addresses the same claims." (citing *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017))).

*Traditional.* If the Court disagrees with the no-evidence argument, TAMUS satisfies the traditional summary judgment standard as well. TAMUS challenged BE&K's "factual allegations … with supporting evidence necessary to consideration of the plea to the jurisdiction." *Miranda*, 133 S.W.3d at 221. TAMUS provided the 2019 letter from McCully explaining the insufficient of the payment application, an affidavit that BE&K was still non-compliant as of November 13, 2020, and a deposition consistent with those claims. *Supra* at 7-12. Thus, "to avoid dismissal [BE&K] must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Miranda*, 133 S.W.3d at 221; *Pepper Lawson*, 669 S.W.3d at 211. Here, that means a fact issue about compliance with conditions precedent. Yet the only evidence BE&K put forward was an affidavit that addressed an irrelevant time frame and averred contractual compliance in a vague, conclusory fashion while lacking any of the documents referenced therein. CR.588-90. That disparity ends this dispute.

TAMUS asserted below that BE&K had not even requested final payment at the time it filed the petition. *See, e.g.*, CR.300, ¶ 10. Ballew's affidavit stated that BE&K "submitted a pencil copy of the payment application to TAMUS." CR.589, ¶ 7. McCully explained that a pencil copy of an application is not something a party "submits" but merely discusses. CR.605 (34:1-3). His position finds support in the contract, CR.120 (the Contractor shall submit a certified Application for Final Payment) and construction treatises, *see, e.g.*, Processes Involving Performance or Scope of

Work § 5.C.2, *Construction Projects*, American Bar Association (2nd ed. 2023). It also finds support in the 2023 email chain BE&K submitted to the district court: counsel for both sides acknowledge it is something subject to further review and discussion. CR.687-89. Ballew's affidavit (attested to after McCully's deposition) provides neither evidence of the "submission" (cite?) nor an explanation for why McCully (explaining this industry term) is not correct.

If this Court ordered a joint status update, the premise is that the parties would collaborate in an attempt to agree on the substance. If Party A sent a proposed draft to Party B and, in return, received edits and comments, the next step would be for Party A to agree or continue negotiating. It would not be reasonable for Party A to file the proposed draft as the joint update. Similarly, although Party A technically could jump straight to a contested filing—that would defy both industry standards and the Court's expectations. Here, instead of a court order, it is industry practice to negotiate disputes before submitting the request. Rather than continue negotiation, BE&K went to court—asserting that the first draft represents full compliance.

Even if the Court views Ballew's affidavit as probative, those "facts" show why the district court should have granted the plea to the jurisdiction. *Cf. Miranda*, 133 S.W.3d at 231 Here ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). Ballew says that, after BE&K completed the project, it submitted the payment applications. CR.589. Ballew does not say that BE&K did this on or before September 1, 2020. Rather, the record evidence shows that BE&K

completed the work after the Petition. CR.602 (23:19-24:12). While a lawyer's statement is not evidence, BE&K's own counsel confirmed this in December 2022. CR.592. And their briefing below shows that final pay application came after the Petition. CR.567. BE&K cannot assert that work was complete on September 1, 2020, meaning that TAMUS had no duty to pay; that alone ends the gambit. *See* CR.118, ¶ 12.1.2.1 ("Completion of all Work is a condition precedent to the Contractor's right to receive Final Payment.").

### 3. The "express provisions" confirm this outcome.

BE&K's failure to show compliance with the conditions precedent to payment confirms the lack of any duty by TAMUS. For the avoidance of doubt, TAMUS will address the express provisions identified by BE&K, which only confirm its failures.

*Section 9.6 – Modification of Contract Time.* The Agreement provides that "*[t]ime limits stated are of the essence*." CR.50, ¶ 14.1; "[t]ime is of the essence" CR.106, ¶ 9.10. In the construction world, this creates what is called a "zero base" contract, which means that "an excusable delay doesn't exist until it's proven." CR.631 (139:2-7); CR.103, ¶ 9.6.1. The contract lists what counts as excusable delays, CR.103-04, ¶ 9.6.2.2, but provides that "concurrent delays" do not result in added time. CR.104, ¶ 9.8. Section 9.6.1 says modifications to the completion date must be made pursuant to Article 11 (change orders) and must account for concurrent delays (9.8). CR.103-04.

TAMUS provided evidence that it is unable to render a decision until BE&K submits proper applications for the outstanding change order requests. CR.300-01, ¶¶ 6, 8, 18. For example, BE&K fails to address concurrent delays. CR.302-03,

CR.623 (106:3-13). TAMUS provided specific evidence, including the "dry-in" error that cost BE&K months of time due to this inexcusable delay. CR.171; CR.302-03; CR.618 (86:11-18). Once BE&K submits a proper change order, TAMUS will either accept it, reject it, or grant the request in part. CR.627-28 (123:19-125:7). In fact, TAMUS has an obligation to respond under section 9.9.4, and a failure to do so would mean that BE&K receives the added days by default. CR.105-06, ¶ 9.9.4.2 (Contractor receives requested days if Owner fails to respond within 45 days). TAMUS fulfilled its obligation to respond, hence the reason that BE&K does not allege a breach (or bring it to the Court's attention at all).

BE&K provides no contrary evidence about the concurrent delay issue—not even a conclusory statement in the affidavit. If there was a dispute about whether an equitable adjustment was appropriate because of TAMUS's judgment about concurrent delay, that would be a fact dispute akin to the one in *Pepper Lawson. See* 669 S.W.3d at 211 (dispute over TSU's denial of equitable adjustment). But the question here is if BE&K complied with requirements to make the request—*i.e.*, a condition precedent to receiving a decision about time. This is akin to a party trying to file a merits brief with this Court as a PowerPoint —which would be rejected as noncompliant—then filing a mandamus petition to make the Court accept the inept filing *and* rule for it on the merits. But this is exactly what BE&K did when TAMUS explained the deficiencies preventing the application's submission, *see, e.g.*, CR.302-03; instead of fixing the issues, BE&K ran to court. This cannot be what the legislature sanctioned when it adopted the "express provision" requirement.

27

***10.3 – Owner's Duty to Pay.*** This section addresses TAMUS's duty to make the progress payments identified in section 10.2. CR.107-10. It provides that TAMUS will withhold the retainage in compliance with State Law. CR.109, ¶ 10.3.2. It says that "[a]t least sixty-five (65) percent of the total Contract must be completed before the Owner can consider a retainage reduction or release" and "[t]he Contractor shall provide written consent of its Surety for any request for reduction or release of retainage." *Id.*, ¶¶ 10.3.2.1-.2.

Here, BE&K seeks final payment, which is governed by Article 12, not Article 10. CR.116-21. Article 12 similarly addresses the final release of retainage, which is a wholly different process from partial reduction in progress payment withholdings addressed in Article 10. CR.120-21. Even if Article 10 were relevant to BE&K's request, there is no contractual duty—the cited provision addresses TAMUS's *discretion* to release retainage early. CR.109, ¶ 10.3.2. Nor can BE&K challenge the exercise of discretion because it did not provide the written consent of surety approving release. CR.301, ¶ 17. A provision affording TAMUS discretion regarding mid-project payments does not impose a duty to issue final, close-out payments.

***11.3 – Claim for Additional Costs.*** BE&K's petition states that "Article 11.3.1 also allows BE&K to recover additional costs incurred during the performance, including, but not limited to, extended general conditions." CR.9, ¶ 24. But BE&K does not specifically plead, much less provide evidence, about what aspect of its grievance falls under this provision of the CMAR Agreement. That is relevant because section 11.3 applies to "claim[s] for an increase in the Contract Sum not related

to a requested change." CR.113, ¶ 11.3.1. All its grievances involved change orders, which fail for the reasons already addressed. *Supra* at 26-27.

For example, BE&K alleges that it is due acceleration costs. CR.13-16.McCully explained that BE&K was not entitled to them because it did not meet the acceleration deadline contemplated in the change order. CR.619 (89:3-23). BE&K could have provided evidence that: (1) it did meet the accelerated deadline; (2) the change order was not conditioned on achieving the accelerated deadline; or (3) it somehow does not shoulder the blame. It provides none—and Ballew's affidavit says nothing on the issue. To the extent BE&K claims costs for the culvert project, TAMUS provided evidence that they were paid for the work. CR.615 (75:4-15). Any remaining grievance is merely an indirect way to raise a change order dispute, *see* CR.617 (82:1-10), which falls outside of section 11.3.1. Whatever the issue, If BE&K believed that TAMUS owed more money pursuant to 11.3, the appropriate step would be to give the Chancellor notice, CR.113, ¶ 11.3.1; 128, ¶ 15.1; 54-55, ¶ 18.1—something they did not do, either. *Infra* at II.B.

BE&K had more than four years to seek and identify jurisdictional evidence but has nothing to show. It has nothing it allegedly sent: no letters (including the ones cited as contractually compliant notice), no documents, no invoices, no emails. Nor does it have anything that the CMAR agreement mandates be created and kept, such as: e-builder submissions, CR.163; construction meeting agendas, CR.166; any iteration of the Work Progress Schedule, CR.169-75; computer generated reports/daily e-builder reports, CR.173-74. Even Ballew's affidavit is worded in a way that is not affirmative evidence of compliance, as his lack of awareness is not evidence that

29

BE&K satisfied any conditions precedent as of September 1, 2020. *See Ryland Grp.*, 924 S.W.2d at 122.

TAMUS "conclusively establish[ed] that … it did not breach an express provision of the contract when it refused to equitably adjust the contract time and price for 'additional costs' incurred" because "[BE&K] did not follow the procedures triggering [TAMUS]'s obligation to pay." *See Pepper Lawson*, 669 S.W.3d at 211–12. BE&K's dearth of evidence precludes jurisdiction. *See Miranda*, 133 S.W.3d at 234.

## C. BE&K's contrary arguments lack merit.

To escape its jurisdictional error, BE&K argued below that: (1) TAMUS seeks to impose an improper obligation to "prove the merits"; (2) *Pepper Lawson* disposes of TAMUS's position; (3) the CMAR Agreement imposes covenants, not conditions precedent. Each lacks merit.

### 1. BE&K misunderstands its burden.

#### a. BE&K does not have to "prove the merits."

BE&K asserted below that TAMUS improperly "requires BE&K to prove the merits of its claim to establish jurisdiction." CR.572. It claims that "no authority suggests that BE&K must prove its claim—or any element of that claim—as a prerequisite to establishing jurisdiction." CR.573.

But the Texas Supreme Court expressly disclaims BE&K's position: "when jurisdiction is intertwined with the merits, the evidence supporting jurisdiction and the merits is necessarily intertwined as well." *Swanson*, 590 S.W.3d at 552. BE&K's burden is "to present sufficient evidence on the merits of [its] claims to create a genuine issue of material fact." *Id.* The Court explains that "[b]y requiring the state to meet

the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Miranda*, 133 S.W.3d at 228. BE&K's position—"would require a trial on the merits for many cases that do not need it, waste the resources of the courts and the parties in the case, and involve state courts in rulings on the merits in cases over which they have no jurisdiction." *Id.* at 233–34. BE&K's grievance is with the law—not TAMUS.

### b. Post-petition facts are not relevant.

BE&K exclusively relies on post-petition "evidence" to support its arguments, including: (1) the project status as of March 2025, CR.588-90; (2) McCully's statements about the building's status in 2025, CR.580; (3) the project status as of December 2022, CR.592-93; (4) submissions made in 2022, CR.685-90. As explained above, jurisdiction is determined at the time of the petition. *Texas Ass'n of Bus.*, 852 S.W.2d at 446 n.9. BE&K thus consistently misapplies the "hornbook law" that "[t]he jurisdiction of the Court depends on the state of things at the time of the action brought." *Grupo Dataflux*, 541 U.S. at 570.

### c. Local government immunity does not apply here.

BE&K argues that its only obligation at this stage is to plead or prove that TAMUS had authority to enter the contract, the suit is for breach, and it identified an express provision. CR.571-73. BE&K errs by relying on cases about local government immunity—a distinct concept with different standards—while *Pepper Lawson* disposes of this argument.

BE&K conflates sovereign immunity with governmental immunity. BE&K's proposed test coincides with that applied to suits against local governments. *See, e.g.*,

*City of Houston v. Williams*, 353 S.W.3d 128, 134–35 (Tex. 2011) (quoting Tex. Loc. Gov't Code §§ 271.151–.152). To overcome immunity in *that* context, a party need only plead or prove the existence of a covered contract (in writing) and that the governmental entity had authority to enter it. *See, e.g.*, *City of Rio Vista v. Johnson Cnty. Special Util. Dist.*, 2025 WL 309937, at *5 (Tex. App.—15th Dist. Jan. 28, 2025, pet. withdrawn). While related concepts, governmental immunity and sovereign immunity are different. *See Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 747 n.1 (Tex. 2017). Both involve legislative discretion over whether, and in what circumstances, to waive immunity. *Williams*, 353 S.W.3d at 134. It makes sense that the State would erect a higher threshold before allowing the State to expend resources. Perhaps that is why the Supreme Court does not use the word "authority" even once in *Pepper Lawson*—because it is not an element of the relevant test.

BE&K's supplemental authority suffers from the same flaw. *See Garland Indep. Sch. Dist. v. Reeder Gen. Contractors, Inc.*, 2024 WL 1208304, at *1 (Tex. App.—Dallas 2024, pet. denied) (examining a case about local government immunity under § 271.151); *A Status Constr. LLC v. City of Bellaire*, 2022 WL 2919934, at *3 (Tex. App.—Houston (1st Dist.) 2022, no pet.) (same). True enough, the Court acknowledged that *identical* language in Chapter 271 was probative. *Pepper Lawson*, 669 S.W.3d at 211–12. But in doing so, it noted that 271 applies to local government entities. *Id.* And expressly noted that Section 114's *distinct* language "cabins the waiver to 'a claim for breach of an express provision of the contract.'" *Id.* at 210.

BE&K's position defies credulity. It claims that it only had to show that TAMUS had authority to enter the contract, the suit is for breach, and it identified an

32

express provision. CR.571-73. BE&K correctly notes that "[n]obody disputes that TAMUS had authority to enter into the CMAR Agreement," CR.572, and the latter two elements would turn on the pleadings. Why, then, did it need a nearly-five-year span for discovery? In fact, why need discovery at all? Perhaps it knew its burden and, upon realizing it had no receipts (literally or metaphorically), changed course.

### 2. BE&K overreads *Pepper Lawson*.

BE&K claims that there is no daylight between *Pepper Lawson* and this case. CR.573-75. It is true that *Pepper Lawson* concerns a contract dispute in the construction setting. 669 S.W.3d at 207. But Section 114, which is infrequently litigated, is a specific statute about construction disputes, so it makes sense that cases pertaining about that statute share a common thread of expensive, construction-related disagreements. *See* Tex. Civ. Prac. & Rem. Code § 114.003. Aside from that superficial similarity, *Pepper Lawson* materially differs from this case in both law and fact.

**1.** As an initial matter, *Pepper Lawson* rejects BE&K's position that the (narrower) jurisdictional inquiry for local government immunity controls when it explains that conditions precedent *are* relevant to the jurisdictional inquiry. *See id.* at 212. Discussing "the extent the jurisdictional inquiry implicated the merits of PLH's cause of action[,]" the Court explained that "TSU failed to conclusively establish that…it did not breach an express provision of the contract…[and] PLH did not follow the procedures triggering TSU's obligation to pay." *Id.* at 211-12. Dismissal accordingly would be appropriate if TSU *did* conclusively establish those two things. *See id.* The Court then explains that PLH had no obligation to prove it satisfied the

conditions precedent because TSU "neither specifically denied that PLH satisfied the payment conditions nor challenged the facts … actually pleaded." *Id.* at 212.

Under BE&K's view, *Pepper Lawson*'s entire discussion of conditions precedent would not only be pointless but wholly misleading. If BE&K were correct about its minimal burden, the Texas Supreme Court would have said that the PLH did not have to prove satisfaction of conditions precedent because that is irrelevant to the inquiry. Instead, it explained that the Court of Appeals erred "[b]ecause TSU did not specifically deny that PLH satisfied all conditions precedent." *Id.* at 212. So, too, for the pleading elements. Instead of identifying the elements BE&K proposes, the Court explained that PLH adequately pleaded that the existence of a contract and *how* TSU breached specific provisions. *Id.* at 211; *see also id.* at 210 ("[PLH] plead[ed] the express contract provisions TSU allegedly breached and detail[ed] how TSU defaulted on its obligations under those provisions."). It would be error, then, to hold that Section 114 does not implicate conditions precedent.

**2.** Indeed, the reverberating difference between these cases is that TSU did not deny satisfaction of conditions precedent or bring an evidentiary plea. *Pepper Lawson*, 669 S.W.3d at 208–09. Unlike TSU, TAMUS both denied the satisfaction of conditions precedent in its answer, CR.279-80, ¶¶ 1, 4, 6, 7, 8, and raised a challenge to the jurisdictional facts, CR.286-92; this means that, unlike PLH, BE&K was required to provide evidence of its jurisdictional claims. This is where BE&K comes up short.

BE&K argues that TAMUS is in the same posture as TSU because TAMUS did not satisfy Texas Rule of Civil Procedure 52 by specifically denying *which* conditions

34

precedent had not been met. CR.575-76. But that does not apply where, as here, TAMUS raised a factual challenge to the pleadings. *See Pepper Lawson*, 669 S.W.3d at 212 (explaining that TSU "*neither* specifically denied that PLH satisfied the payment conditions *nor* challenged the facts that were actually pleaded" (emphasis added)).

Even if Rule 54 applies, TAMUS made sufficient denials. First, in Paragraph 4 of the Answer, which asserts that BE&K failed to complete the work required of it. CR.279. This is an explicit condition precedent of the contract. CR.118, ¶ 12.1.2.1. Second, TAMUS explained that it must be able to deduct liquidated damages. CR.279, ¶ 6; CR.120, ¶ 12.3.1–.4. These are on top of TAMUS's answer that "Plaintiff is barred from recovering because all of the conditions precedent for Plaintiff to recover have not been performed or occurred." CR.280, ¶ 7.

**3.** The facts are also disparate. Contra CR.573 ("[*Pepper Lawson*] addressed a parallel claim addressing parallel circumstances"). PLH submitted the proper extension requests (and received a decision); properly "invoiced [Defendant] for the remaining balance due"; and waited until TSU failed to pay the final invoice within the statutory 30-days before raising the issue. *Id.* at 207-09. Even then, PLH participated in the pre-suit resolution process. *Id.* at 207. Because PLH complied with the contractual obligations, that left a true dispute on the merits for the courts to resolve (i.e., whether denial of the change order was wrongful and therefore a breach).

Here, BE&K did none of the above: because it did not submit a proper extension request, it did not receive a decision; with that process unsettled, there was no final invoice to submit; and, it skipped the pre-suit resolution process entirely. The Texas Supreme Court was not issuing a blanket decision that all recitations of Section 114

skip past the immunity inquiry. *Cf. Dohlen v. City of San Antonio,* 643 S.W.3d 387, 395 (Tex. 2022). Yet BE&K's position is that the legislature consented to be sued for these claims regardless of what the jurisdictional evidence shows. That defies sovereign immunity jurisprudence. *See, e.g.*, *Chatha*, 381 S.W.3d at 513.

### 3. BE&K misconstrues the Agreement.

Perhaps at this point, the Court is wondering how a company managing a nearly-50-million-dollar project could fail to provide basic documentation. The record speaks to that. The apparent issue is that BE&K treated change orders as lump sum payments even though the contract established a "cost-plus" system that must be verified by audit. *See* CR.612-13, 620-22. Yet BE&K does not raise the lump-sum argument even in the petition because the contract squarely rejects it. CR.115-16, ¶ 11.8.1; *see* CR.610 (54:14-18). BE&K accordingly did not correctly manage either its finances, documents, or both. And the Court need not take TAMUS's word for it but can instead look to the myriad lawsuits BE&K is facing from subcontractors on this project. *See Infinity Contractors International, ltd. v. BE&K Building Group, LLC*, No. 20-cv-36410 (Erath Cty. 2020); *Legacy Masonry, LLC, v. BE&K Building Group, LLC*, No. 20-cv-36365 (Erath Cty. 2020); *Walker Drywall, LLC, v. BE&K Building Group, LLC*, No. 20-cv-36421 (Erath Cty. 2020). To that end, Courts do not protect parties "from the consequences of their own oversights and failures in nonobservance of obligations assumed." *James Constr. Grp., LLC*, 650 S.W.3d at 403–04 (quoting *Dorroh-Kelly Mercantile Co. v. Orient Ins. Co.*, 104 Tex. 199 (1911)).

### a. The Agreement identifies conditions precedent.

BE&K's argument that its shortcomings do not implicate conditions precedent fails under the contract's language and common sense. A condition precedent is "an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g,* 327 S.W.3d at 108 (*quoting Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex. 1992)). Texas courts find a condition precedent wherever the language clearly makes performance conditional. *Id.* at 109. Language is unambiguous when it cannot reasonably be interpreted more than one way. *Bd. of Regents of Univ. of Texas Sys. v. IDEXX Lab'ys,* 691 S.W.3d 438, 443 (Tex. 2024).

The CMAR Agreement's language indicates that work completion and cost documentation are both conditions precedent to final payment. For example, the Agreement explicitly states that "[c]ompletion of all Work is a condition precedent to … final payment." CR.118. This is unambiguous. *See IDEXX Lab'ys,* 691 S.W.3d at 443 ("Disagreement over the meaning of a contract does not mean that it is ambiguous, legally."). The Agreement further provides that "[t]he Owner has no duty to pay the Contractor except on receipt by the ODR of … a complete Invoice certified by the A/E." CR.109. This, too, shows that the parties conditioned TAMUS's duty to pay on an event:  here, receipt of a certified invoice. *See Solar,* 327 S.W.3d at 109. And that makes sense because TAMUS must collect these documents before it can lawfully remit payment. *Infra* at 39-40.

Without the contract's language on its side, BE&K asserts that provisions conditioning the release of funds are covenants because they "address the timing and

manner of payment." CR.577-79. To aid its claim, BE&K relies on inapposite, decades-old cases. *See id.* (citing *Gulf Const. Co. v. Self*, 676 S.W.2d 624, 630 (Tex. App.—Corpus Christi–Edinburg 1984, writ ref'd n.r.e.), and *Sheldon L. Pollack Corp. v. Falcon Industries,* 794 S.W.2d 380 (Tex. App.–Corpus Christi 1990, writ denied)). Yet even those cases do not say that provisions dealing with payment are covenants as a matter of law. The disputed provision in *Gulf Construction* was followed by an "unconditional agreement to pay." *Gulf Const.*, 676 S.W.2d at 629; *accd. Pollack*, 794 S.W.2d at 384. Those cases are just routine applications of the rule that, in the absence of clear language to the contrary, courts will construe a contract provision as a covenant. *See Solar,* 327 S.W.3d at 109–10.

Indeed, Courts of Appeals that have reached the issue in this century reject BE&K's categorical rule. *See, e.g., Calpine Producer Services, L.P. v. Wiser Oil Co.*, 169 S.W.3d 783, 789 (Tex. App.—Dallas 2005, no pet.) (declining to follow "[t]hose cases uniformly refus[ing] to construe language as a condition precedent which plainly conditions payment … on the occurrence of an event"). The Fifth Court of Appeals explained that adopting BE&K's reading of *Gulf Coast* would make it practically impossible for parties to set enforceable conditions on payments. *See id.* Stated another way, if a right to payment was always a covenant, conditions precedent could never apply to a contract that involves, for example, money. That is not workable and, in any event, would run afoul of the fundamental idea that parties are free to "intelligently, voluntarily, and knowingly" form contracts. *Solar,* 327 S.W.3d at 112. BE&K's claim that "provisions regarding terms of payment … are covenants, rather than conditions precedent," CR.578, fails on its own terms.

Without this categorical approach, BE&K falls flat. Unlike the contracts in *Gulf Construction* and *Pollack*, the CMAR Agreement conditions TAMUS' duty to pay on BE&K's completing the work and providing sufficient documentation. TAMUS provided evidence that BE&K satisfied neither. *Supra* at 22-23.

### b. TAMUS cannot lawfully remit payment.

**1.** Even if the provisions' language were not clear, the context would show the parties intent. *See IDEXX Lab'ys,* 691 S.W.3d at 442-43 (explaining that context matters). Here, the fact that TAMUS is a public entity means it cannot lawfully release the funds without work completion or sufficient cost documentation.

*Work Completion.* TAMUS cannot remit payment until the work is complete because of the rules surrounding the financing of public projects. *See, e.g.*, Tex. Gov't Code Ann. § 403.071; *cf.* Tex. Gov't Code § 2260.054 (settlement of claims must come from appropriated funds). Until the work is done, change orders cannot be ruled out, meaning that final payment cannot be calculated. *See supra* at 5 (explaining cost-plus). Any excess from audits would be deducted from final payment. CR.49-50, ¶ 12.3. The same logic extends to retainage. Take the lien release example: not only is it standard in construction contracts,[2] TAMUS cannot release retainage without the assurance because any lien claim must be paid out with the appropriated funds. McCully explained that TAMUS must "hold the funds sufficient to cover any

---

[2] Tex. Prop. Code Ann. § 53.101; *see J.P. Morgan Chase Bank, N.A. v. Tex. Contract Carpet, Inc.,* 302 S.W.3d 515, 525 (Tex. App.—Austin 2009, no pet.) (explaining that the Property Code sets forth "[t]he requirement to withhold 'retainage' for the benefit of lien claimants").

claims that we're aware of or any potential losses to the owner" because "[w]e're a public agency. That's part of it." CR.628 (126:5-8).

***Cost Documentation.*** TAMUS's payments are also subject to strict rules regarding financial transparency. *See, e.g.*, Tex. Gov't Code § 403.071(g) (Comptroller audit of claims); § 2102.004 (mandatory internal audits); *Id.* § 321.013 (mandatory audit by State Auditor); Tex. Educ. Code § 51.9335(c) (same). These are the same rules that prevent public officials from committing fraud by, for example, funneling money to themselves or family members. That is why the general conditions, which must be in nearly every state construction contract, *see* Tex. Gov't Code § 2166.302, address this topic from multiple angles: CR.43, ¶ 10.1.10 ("Owner shall have the right to verify and audit the details of Contractor's billings, certificates, accountings, cost data, and statements[.]"); CR.57-58, ¶¶ 22.01-05 (applying public ethics rules); CR.58, ¶ 23.2 (records requirements- personnel costs); CR.59, ¶ 23.4 (eligibility/conflict-of-interest); CR.60, ¶ 23.12 (record availability and retention); CR.60, ¶ 23.16 (Public Information Act applies). And why TAMUS reiterates the documentation standard in the supplemental conditions. *See, e.g.*, CR.129, ¶ 16.4 (repeating Public Information Act obligation); CR.120, ¶ 12.2.2 (requiring all contract documentation before release of final payment).

As a result, TAMUS cannot lawfully issue payment without sufficient proof of costs. Yet BE&K's position that the document provisions are not conditions precedent would obligate TAMUS to pay in the absence of supporting documents—disregarding basic conditions preventing fraud and promoting financial transparency.

***Change Orders.*** For the same reasons, proper change orders are conditions precedent because TAMUS cannot determine final payment without them. Change orders could materially impact the final payment amount. And a determination cannot be made without a proper application. *Supra* at 26-27. Indeed, it is against the law for TAMUS to just pick a random number and pay it, *see* Tex. Gov't Code § 2102.004. Work completion and receipt of sufficient documents are not just important but necessary conditions. This is not a dispute about TAMUS's exercise of discretion, *contra Pepper Lawson*, 669 S.W.3d at 211-12, it is a dispute about BE&K's unwillingness to comply with the burdens that come with dealing with a public entity.

**2.** BE&K argued to the trial court that its failure to provide a contractually sufficient payment application is the result of moving audit standards. RR.26-29. BE&K provides no evidence of this aside from just asserting it at the hearing. *Cf. Abila*, 683 S.W.3d at 848 ("[A]rguments of counsel are not evidence.").[3] BE&K meanwhile relies on "evidence in the record from Mr. Ballew that we complied with the audit." RR.43. That evidence is Ballew's statement that "BE&K [] fully complied with TAMUS audit request and provided documentation as required under the CMAR Agreement to TAMUS's auditor." CR.589. That cannot carry the day. *Supra* at 21.

---

[3] The Agreement states that generally accepted accounting principles (GAAP) apply, CR.43-44, ¶ 10.1.10; CR.58, ¶ 23.3, in accordance with state law, Tex. Gov't Code § 321.013, which also requires that the State Auditor uses generally accepted auditing standards (GAAS), *id.* These are broadly applicable business standards. *See Rsch. and Dev. Arrangements*, Statement of Fin. Acct. Standards No. 68 (Fin. Acct. Standards Bd.) (GAAP); *Codification of Acct. Standards & Procs.*, Statement on Auditing Standards No. 1 (Am. Inst. of Certified Pub. Accts.) (GAAS).

But this Court need not determine whether GAAP/GAAS include basic payroll documents because McCully's affidavit identifies documents that the contract explicitly requires and BE&K had not provided. CR.300-01. On top of purported "moving" standards, BE&K represented to the district court that TAMUS was invoking provisions "contained in the February of 2024 version of the general and supplemental conditions from the University or from Texas A&M University, not the 2016 version which are the ones that were used here." RR.27:3-7. This appears to be seizing on a typographical error in the original plea to the jurisdiction, CR.288, not raised in the reply or at the hearing. For the avoidance of doubt, all citations in the following table (and the brief generally) are to Exhibit A of BE&K's Petition (the 2016 contract). *See generally* CR.21-278.

| ¶ | Missing Document | CMAR Provision | CR |
|---|---|---|---|
| 6 | Accurate and complete records of all transactions, receipts, or invoices for payment of the General Conditions Costs. | UGC 10.3.1.2; 11.1-.2; 12.1.-.2 | 45-50; 115-16 |
| 7 | A complete release of all liens. | UGC 10.3.1.4 | 45 |
| 7 | A written consent of the surety to release final payment. | UGC 10.3.1.4; USC 10.3.2.1 | 45; 109 |
| 7 | An affidavit that release covers all materials and services for which a lien could be filed. | UGC 10.3.1.4 | 45 |
| 8 | A complete and final accounting of all the direct construction costs. | UGC 10.3.1.5 | 46 |
| 9 | Completion of all work and punch list items. | USC 12.1.2.1 | 118 |
| 10 | An application for final payment. | USC 12.3.1 | 120 |
| 11 | Documentation establishing payment of all liens | UGC 10.3.1.4 | 45 |
| 12 | Final copies of all Close-Out documents. | UGC 1.4; USC 12.3.2 | 68; 120 |
| 13 | Final submittals for the Project. | SSC 01-29-00, ¶ 1.03(F); SSC 01-78-00 | 153; 245-53 |

42

| 14 | Record document drawings for the project. | SSC 01-78-00, ¶ 1.07(C) | 253 |
|---|---|---|---|
| 15 | The guarantee of warranties for the roof or the mechanical yard gate. | USC 13.1-.7; SSC 13.2.1 | 121-23; 138-39 |
| 16 | A request to release retainage in e-Builder | UGC 10.3.1; SSC 01-29-00, ¶ 1.03(a) | 45; 151 |
| 17 | Written consent of the Surety for any request for reduction or release of retainage. | USC 10.3.2.1. | 109 |
| 18 | Documents from BE&K that are required to approve or deny outstanding change orders or time extension requests. | USC 11.7.2, 11.8; SSC 01-26-00 ¶ 1.02(A); SSC 01-32-00 ¶ 1.03(B)(10) | 115-16; 149-50; 174 |
| * | Final Payment Documentation (encompassing all of the above) | USC 12.3.2 | 120 |

BE&K next argues that TAMUS's use of a third-party auditor is not in the Agreement, implying that this service would somehow have different documentation standards. RR.28-29. But the contract explicitly requires that cost must be "audited and verified by Owner or Owner's representatives." CR.46. And even if the Court puts aside the purported issues about *financial documents* in an *audit*, the record shows BE&K's failure to provide a *narrative* description about the concurrent delay to *McCully's team* to support the delay request. CR.302-03 (2019 Letter); CR.618 (86:11-18) (Deposition); CR.171 (Contract). Ballew's affidavit says nothing about the concurrent delay issue, particularly as of September 2020.

BE&K wants to make this a fact issue yet failed to provide any evidence creating one. BE&K wants the Court to believe this is *Pepper Lawson 2.0* when it is really a standard evidentiary plea under *Miranda*. BE&K wants to make this a fairness issue yet failed to comply with the basics of the contract. The Court need not reach any of that—but instead can reverse based on the fundamental principles of civil procedure

that: (1) jurisdiction is determined at the time of the petition; and (2) under the summary judgment standard, some evidence beats no evidence any day of the week. The Court should not condone this "sue first, comply later" approach—particularly in the sovereign immunity context.

## II. BE&K's failure to provide notice precludes jurisdiction.

Further evidence of noncompliance (a pattern here) is BE&K's failure to give notice of its breach claim, which is itself jurisdictional. The Legislature explicitly states that notice provisions are jurisdictional. The CMAR Agreement twice imposes the requirement that BE&K must give notice to the Chancellor before it can file suit. BE&K provides no evidence of compliance with the notice provision, and its "substantial compliance" argument is untenable: yet another reason this Court must dismiss this suit.

### A. Notice provisions are jurisdictional.

Texas Government Code Section 311.034, titled "Waiver of Sovereign Immunity," provides that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." The Texas Supreme Court explained the history of this provision, including the legislature's explicit mandate adopted in response to a judicial erosion of this threshold requirement. *See Chatha*, 381 S.W.3d at 510–11. Strict enforcement "is consistent with the doctrine of sovereign immunity" which "remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver." *Id.* at 512.

The Texas Supreme Court recently reaffirmed this principle in *Texas State University v. Tanner*, 689 S.W.3d 292 (Tex. 2024). There, plaintiff timely filed a petition but failed to serve Texas State until after the limitations had run. *Id.* at 296. Even though limitations are typically an affirmative defense, the Court held that Texas State appropriately raised the limitation issue in its plea to the jurisdiction. *Id.* The Court explained that "[t]he whole point of § 311.034 is to require courts to treat *any* statutory prerequisite to suit—whether in the statute that directly waives immunity or in any other statute—as jurisdictional" because "plaintiffs cannot invoke the judicial power unless they comply with *every* jurisdictional requirement[.]" *Id.* at 301–02. A plaintiff must establish that any statutory prerequisites have been satisfied.

## B.  BE&K failed to give the required notice.

### 1.  The Agreement includes a statutory notice provision.

The UGSC states that:

> The dispute resolution process provided in Chapter 2260, *Texas Government Code*, and the related rules adopted by the Texas Attorney General pursuant to Chapter 2260, shall be used by Owner and Contractor to attempt to resolve any claim for breach of contract made by Contractor that cannot be resolved in the ordinary course of business. Contractor shall submit written notice of a claim of breach of contract under this Chapter to the Chancellor of The Texas A&M University System, who shall examine Contractor's claim and any counterclaim and negotiate with Contractor in an effort to resolve the claim.

CR.54-55 (¶ 18.1); 128. The Texas Supreme Court noted in *Pepper Lawson* that "parties may incorporate a statute into their contract by reference." 669 S.W.3d at 212 (citing *City of Houston*, 353 S.W.3d at 144).

The Chapter 2260 process imposes a notice requirement before suit. *See* Tex. Gov't Code § 2260.051(b) ("A contractor must provide written notice to the unit of state government of a claim for breach of contract not later than the 180th day after the date of the event giving rise to the claim."). "The notice must state with particularity: (1) the nature of the alleged breach; (2) the amount the contractor seeks as damages; and (3) the legal theory of recovery." *Id.* § 2260.051(c). Upon receipt of the notice, "[t]he chief administrative officer or, if designated in the contract, another officer of the unit of state government shall examine the claim and any counterclaim and negotiate with the contractor in an effort to resolve them." Tex. Gov't Code § 2260.052. This reflects "the Legislature['s] … interest in managing state fiscal matters" by potentially avoiding litigation through negotiation. *See Chatha*, 381 S.W.3d at 513.

### 2. BE&K did not give notice of its claims before suit.

BE&K concedes that it did not give formal notice of its breach of contract claims to the Chancellor before filing suit. CR.580-81. Because "[BE&K] cannot invoke the judicial power unless they comply with *every* jurisdictional requirement", *Tanner*, 689 S.W.3d at 302, and "pre-suit notice to a governmental defendant is a statutory prerequisite," *Chatha*, 381 S.W.3d at 514, the court lacked jurisdiction to proceed.

### C. BE&K's contrary arguments again lack merit.

### 1. Substantial compliance does not apply.

BE&K claims that it substantially complied with the notice obligation. CR.580-81; RR.30. But the Texas Supreme Court held that substantial compliance does not apply to mandatory notice provisions. *See BankDirect Cap. Fin., LLC v. Plasma Fab,*

*LLC*, 519 S.W.3d 76, 78 (Tex. 2017). Even if substantial compliance applied here, BE&K provides no evidence of such, as Ballew's affidavit does not address it.

The Texas Supreme Court, in *BankDirect*, examined "whether a notice provision … should be read as written, or instead whether the Court should adopt a 'substantial compliance' approach that excuses slip-ups." *Id.* at 78. The Court "opt[ed] for the former[,]" noting that "[t]he Legislature has codified 'substantial compliance' throughout Texas law …. [b]ut it did not do so here." *Id.*; *see id.* at 83 (gathering examples of codified substantial compliance). As a result, the governing statute imposed "proper notice [a]s a condition precedent to cancelling the policy." *Id.* at 85.

The same result applies here. In *BankDirect*, "[t]he parties contractually made notice 'as required by [section 651.161(b)]' a precondition to cancellation." *Id.* at 86. Here, BE&K must provide notice, at which point the Chancellor "shall examine the claim and any counterclaim and negotiate … in an effort to resolve them." Tex. Govt. Code § 2260.052. Chapter 2260's notice provision does not, however, provide for a substantial compliance standard. *See id.* § 2260.051 As a result, "[BE&K] failed to meet the law's unambiguous requirements, and the Legislature enacted an austere consequence for noncompliance." *See BankDirect*, 519 S.W.3d at 86. Here: no jurisdiction. *Tanner*, 689 S.W.3d at 301–02; *Chatha*, 381 S.W.3d at 514.

Even if BE&K could rely on substantial compliance here, the evidence defeats any claim. First, BE&K argues that McCully's July 2019 letter referencing "past correspondence" is evidence of statutorily sufficient notice. CR.580-81. But the letter is only addressing the change order process, including BE&K's failed attempts to

47

complete a proper application. CR.302-03. Even under charitable inferences, all indications point to these communications pertaining to change orders contemplated in Article 11, CR.111-16—as opposed to the external dispute resolution processes outlined in Article 15, CR.128. Communications made in the ordinary course of business cannot be sufficient for statutory notice of a dispute.

BE&K's second argument is that it "substantially complied" with the statutory notice by meeting with McCully's team in the same *building* as the Chancellor's office. RR.30. This is analogous to a party unsuccessfully attempting to settle a dispute with the attorney general's office and then claiming that, because that office is near the Texas Supreme Court, this meeting is a sufficient notice of appeal. But even then, both the contract and the law require notice in writing. *See* CR.60 (¶ 23.15) ("All notices, consents, approvals, demands, requests or other communications relied on by the parties shall be in writing."); *James Constr. Grp.,* 650 S.W.3d at 405 ("[S]ubstantial compliance with a condition precedent requiring written notice may not be achieved without a writing in some form."). BE&K provides no such evidence.

### 2. Section 114 does not preclude a notice requirement.

BE&K argued in its supplemental briefing that 2260's notice requirement does not apply because "Chapter 2260 clearly states that it is inapplicable to a claim for breach of contract to which Chapter 114 of [TCPRC] applies." CR.637; RR.20-21. The question, in the immunity context, is whether the legislature clearly and unequivocally consented to suits that *lack* a pre-suit notice. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). The answer is no. Indeed, a contrary

conclusion would be news to the Legislature, the Attorney General, and the Texas Facilities Commission (which designs the mandatory contract provisions).

Section 114's text does not counsel this outcome. First, incorporating 2260's notice provision is not the same as requiring a suit "under 2260." Chapter 2260 outlines a comprehensive process requiring ALJs; even if successful, many claimants cannot be paid absent legislative approval. *See* Tex. Gov't Code §§ 2260.101-.08. Moving *that* aspect to state court does not preclude TAMUS from incorporating the notice requirement. Second, Section 114 states that "[a]djudication procedures, including requirements for serving notices or engaging in alternative dispute resolution proceedings before bringing a suit … that are stated in the contract subject to this chapter … are enforceable[.]" Tex. Civ. Prac. & Rem. Code § 114.005. BE&K's position renders this statute superfluous. *See Pub. Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460 (Tex. 2024) ("[Courts] 'give meaning to every word in a statute, harmonizing each provision', while 'consider[ing] the context and framework of the entire statute[.]'" (second alteration in original)).

Section 114's text does not eliminate the jurisdictional import of notice provisions, let alone show a "clear and unambiguous expression" to waive an immunity threshold. *Taylor*, 106 S.W.3d at 696. Indeed "the statute would at most be ambiguous as to whether [it] waives immunity, and 'ambiguity precludes … finding an unmistakable Legislative intent to waive sovereign immunity.'" *Navarro*, 2024 WL 4984183, at *4 (quoting *Taylor*, 106 S.W.3d at 701).

Indeed, this would be news to those who authored the statute and those who implement it most. The legislature understood Section 114 to be skipping the legislative approval of judgments imposed by Chapter 2260, to decrease the cost of doing business. House Comm. on Judiciary and Civ. Juris., Bill Analysis, Tex. H.B. 586, 83d Leg., R.S. (2013). Under BE&K's view, the legislature imposes jurisdictional notice requirements for suits less than $250,000 (i.e., Chapter 2260)—but not larger ones (i.e., Section 114). Considering the notice requirements exist to preserve resources by avoiding litigation through negotiation, that would be an absurd result. The Texas Facilities Commission also requires that the Chapter 2260 notice requirement be in all construction contracts with the state. See Tex. Gov't Code § 2166.302 (requiring Texas Facilities Commission to identify mandatory provisions); CR.24-61 (incorporating mandatory provisions); *see* CR.68 (acknowledging that Supplementary conditions follow mandatory General Conditions). Accepting BE&K's view would nullify notice provisions across contracts state-wide.

## III. Dismissal is the only appropriate outcome.

When the evidence disproves jurisdiction, dismissal is proper. *See Young v. Texas Parks & Wildlife Dep't*, No. 15-24-00052-CV, 2025 WL 1200947, at *7 (Tex. App.—15th Dist. Apr. 24, 2025, no pet. h.) (holding that dismissal was appropriate where plaintiff "affirmatively demonstrate[d] incurable defects in jurisdiction"). BE&K provides no evidence that it satisfied the conditions precedent for payment or retainage before filing the petition on September 1, 2020. In fact, it frequently admits that this did not happen. *See* CR.567, 580-81 (Briefing); CR.589 (Ballew Affidavit); CR.592-93 (2022 Update Letter); CR.685-90 (Post-briefing Submissions). The

Court should put an end to this gambit and allow TAMUS to "extricate itself from litigation [where] it is truly immune." *Miranda*, 133 S.W.3d at 228.

## PRAYER

The Court should reverse the district court order denying TAMUS's plea to the jurisdiction and render judgment dismissing the suit.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

AARON L. NIELSON
Solicitor General

BRENT WEBSTER
First Assistant Attorney General

/s/ Jacob C. Beach
JACOB C. BEACH
Assistant Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-6407
Fax: (512) 474-2697

State Bar No. 24116083
Jacob.Beach@oag.texas.gov

Counsel for Appellant

## CERTIFICATE OF COMPLIANCE

Microsoft Word reports that this brief contains 13,597 words, excluding exempted text.

/s/ Jacob C. Beach
JACOB C. BEACH

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Jacob Beach
Bar No. 24116083
nancy.villarreal@oag.texas.gov
Envelope ID: 102264737
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 20250620_BEK_ BoM_Final
Status as of 6/20/2025 5:19 PM CST

Associated Case Party: BE&K Building Group, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Frank Domino | 24038864 | frankdomino@mehaffyweber.com | 6/20/2025 5:01:22 PM | SENT |
| Thomas Crist | 24119645 | tcrist@beneschlaw.com | 6/20/2025 5:01:22 PM | SENT |
| Jonathon Korinko | | jkorinko@beneschlaw.com | 6/20/2025 5:01:22 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Athena Leyton | | athena.leyton@oag.texas.gov | 6/20/2025 5:01:22 PM | SENT |
| Nicole A.Myette | | nicole.myette@oag.texas.gov | 6/20/2025 5:01:22 PM | SENT |
| Toni Shah | | toni.shah@oag.texas.gov | 6/20/2025 5:01:22 PM | SENT |
| William Farrell | | biff.farrell@oag.texas.gov | 6/20/2025 5:01:22 PM | SENT |
| Jacob Beach | | jacob.beach@oag.texas.gov | 6/20/2025 5:01:22 PM | SENT |